IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ELVIS J. HARTMAN, | Case No. 6:14-cv-01877-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN<br>Commissioner of Social Security, | |
| Defendant. | |

David W. Hittle, 3040 Commercial Street SE, Suite 200, Salem, OR 97302. Of Attorneys for Plaintiff.

Billy J. Williams, Acting United States Attorney, Janice E. Hebert, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 SW Third Avenue, Suite 600, Portland, OR 97201-2902; L. Jamala Edwards, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Elvis Jon Harman ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB"). For the following reasons, the Commissioner's decision is AFFIRMED.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla but less than a preponderance . . . ." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225-26.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff protectively filed an application for DIB on February 7, 2011, alleging disability beginning on January 2, 2008. AR 165, 196. He was 52 years old at the alleged disability onset date. *See id.* He alleges disability due to the following medical conditions: a heart attack, loss of short term memory, and inability to lift more than 40 pounds. AR 200. The Disability

Determinations Service denied his applications initially on July 27, 2011, and upon

reconsideration on November 16, 2011. AR 20, 97-101, 106-09. Plaintiff subsequently requested

a hearing before an Administrative Law Judge ("ALJ"). AR 112-13. An administrative hearing

was held on January 15, 2014. AR 34. At the hearing, Plaintiff amended his alleged disability

onset date to November 20, 2010, his 55th birthday. AR 40. After considering all the evidence in

the record, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.

AR 20-29. The Appeals Council considered the record, including additional evidence submitted,

but declined to review the decision, making the ALJ's decision the final order of the

Commissioner. AR 1-6. Plaintiff now seeks judicial review of that decision.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. *Id.* §§ 404.1510, 416.910. If the claimant is performing such
        work, she is not disabled within the meaning of the Act. *Id.*
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.       Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Unless expected to result in death, an impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. *Id.* §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.       Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. *Id.* §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.       Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.       Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Bowen*, 482 U.S. at 140-41 n.5. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ began his decision by noting that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. AR 22. The ALJ then applied the sequential process. AR 22-28. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date through his date last insured. AR 22. At step two, the ALJ determined that Plaintiff's coronary artery disease, post coronary artery bypass grafting, hypertension, and obesity were severe impairments. AR 22-24. At step three, the ALJ determined Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments. AR 24-25.

The ALJ then determined Plaintiff's residual functional capacity ("RFC"). AR 25-28. Here, the ALJ found:

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b). Specifically, the claimant can lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently; and stand and/or walk for about six hours in an eight-hour day with normal breaks; and sit for about six hours in an eight-hour day with normal breaks. Pushing and pulling is unlimited other than shown for lifting and carrying.

AR 25. At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as an exterminator. AR 28. Consequently, the ALJ concluded that Plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred by: (A) finding that Plaintiff's lumbar spine condition was not a severe impairment at step two; (B) rejecting Plaintiff's testimony regarding subjective symptoms; (C) giving "little or no weight" to the opinion of Dr. Kirk Walker, M.D., in his RFC questionnaire and giving "significant weight" to the opinions of Drs. Martin Kehrli, M.D., and Sharon Eder, M.D.; (D) failing to indicate what weight he gave to the lay-witness testimony of KoLynn Hartman or giving little to no weight to her statement; and (E) failing to provide Plaintiff's counsel with an opportunity to question the vocational expert.

**A.  Severe Impairment Finding**

Plaintiff first argues that the ALJ erred at step two by finding that Plaintiff's lumbar spine condition was not a severe impairment. The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert*, 482 U.S. at 153-54. At step two, the claimant bears the burden to show the existence of a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii); *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007). In order to meet this burden, the claimant must show "medical evidence consisting of signs, symptoms, and laboratory findings, not only [a claimant's] statement of symptoms[.]" 20 C.F.R. § 404.1508. An impairment is "not severe" if the medical evidence shows that the impairment "does not significantly limit [a claimant's] physical or mental ability to do basic work activities," which includes the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(a)-(b). When an ALJ finds any of a claimant's impairments to be severe, the ALJ must continue

with the sequential analysis and subsequently consider the effects of all of the claimant's

impairments, severe and non-severe. SSR 96-9p, *available at* 1996 WL 374184, at *5.

At step two, the ALJ determined that Plaintiff's lumbar spine condition was not a

"medically determinable impairment." AR 22, 24. The ALJ noted that Plaintiff received lumbar

spine x-rays in February 2009 that "demonstrated minimal degenerative disc disease[.]" AR 24

(citing AR 469). The ALJ discussed Plaintiff's complaints of "back pain" in early 2011. *Id.*

(citing AR 393-94). The ALJ determined that Plaintiff "was simply assessed with [a] 'backache'

and given some pain medications" because the x-rays demonstrated only "minimal findings." *Id.*

(citing AR 393-94, 466-67). The ALJ stated that Plaintiff "did not consistently complain of back

pain and did not receive any significant treatment." *Id*. Consequently, the ALJ concluded: "The

record does not establish any medically determinable impairment. Even if this evidence were to

establish a medically determinable impairment, there is no indication it would cause more than

mild limitation in his abilities to perform work-related activities, and it would not be a severe

impairment." *Id.*

In addition to the medical evidence that the ALJ discussed, Plaintiff submitted evidence

relating to his lumbar spine condition, which the Appeals Council considered in denying

Plaintiff's request for review.[1] AR 1-2, 520-21. Specifically, Plaintiff submitted results relating

to a lumbar spine MRI from February 18, 2014.[2] AR 2. Although some of the results from the

---

[1] When a claimant submits additional evidence that is considered by the Appeals Council, "that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Thus, the Court considers this evidence in reviewing the ALJ's decision.

[2] DIB requires at least 20 quarters of coverage within a 40-quarter period that ends with the quarter in which the disability occurred. The end of a claimant's insured status is frequently referred to as the "date last insured." In a DIB case, the claimant must prove that the current disability began on or before the date last insured. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th

MRI were "incompletely evaluated," the MRI did indicate that Plaintiff had a "[m]ild disc bulge" in his L3-L4 vertebrae and "[m]ild [to] [m]oderate central stenosis" in the L4-L5 vertebrae. AR 520-21. The Court considers the entire medical record, including the new medical evidence of the lumbar MRI, which was not before the ALJ. With this new evidence, the Court finds that the ALJ's conclusion that Plaintiff did not provide enough medical evidence of his lumbar spine condition to survive the *de minimis* step-two screening is not supported by substantial evidence in the record.

The Court finds, however, that, although the ALJ erred in concluding that the lumbar spine condition was not a "medically determinable impairment," this error did not prejudice Plaintiff because the ALJ ultimately resolved step two in Plaintiff's favor. *See Gray v. Comm'r Soc. Sec. Admin.*, 365 F. App'x 60, 61 (9th Cir. 2010) (rejecting the argument that the ALJ erred at step two by determining certain impairments were non-severe because "the ALJ concluded that [the claimant's] other medical problems were severe impairments"); *Mondragon v. Astrue*, 364 F. App'x 346, 348 (9th Cir. 2010) ("Any alleged error at step two was harmless because step two was decided in [the claimant's] favor with regard to other ailments."). Such an error is harmless because the ALJ must consider both the severe and nonsevere impairments in making an RFC determination. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional

Cir. 1998) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). Here, Plaintiff's date last insured was December 31, 2013, so any medical records from after December 31, 2013 must be related to a disability beginning before that date. AR 22. Plaintiff complained of back problems since 2009. AR 393-94, 466-67, 469. Additionally, there is no evidence that the findings of the February 2014 MRI were acute issues caused in the weeks after December 31, 2013. Therefore, the Court considers this evidence related to Plaintiff's back problems from before the date last insured.

capacity."). Here, the ALJ expressly noted as much, stating that he has "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." AR 25.

Although the ALJ noted that Plaintiff's lumbar spine condition was not a "medically determinable impairment," which might indicate the ALJ may not have considered it when determining the RFC, the ALJ found in the alternative that Plaintiff's back problem was non-severe. AR 24. A review of the ALJ's opinion demonstrates that the ALJ did consider Plaintiff's back issues in determining the RFC because the ALJ specifically referenced Plaintiff's back condition when determining the RFC. *See* AR 26 (discussing how Plaintiff denied back pain in October 2013 and how an October 2011 examination revealed no back pain). Thus, the ALJ did not commit reversible error by failing to consider Plaintiff's lumbar spine to be a severe impairment at step two.

## B.  Plaintiff's Testimony Regarding Subjective Symptoms

Plaintiff argues that the ALJ erred by rejecting Plaintiff's subjective symptom testimony about "breathing problems which he believes are COPD or bronchitis; chronic low back pain; bilateral shoulder pain; and wrist pain." Dkt. 17 at 15. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she

has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

At the first step of the credibility framework, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms . . . ." AR 25. At the second step, however, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." *Id.* The ALJ offered three reasons for this conclusion: (1) Plaintiff's allegations are inconsistent with his daily living activities; (2) Plaintiff's allegations are inconsistent with the objective medical findings; and (3) Plaintiff's allegations of severely limiting symptoms are inconsistent with "the lack of corresponding complaints to his treating providers." AR 26-28.

### 1. Daily Living Activities

The ALJ determined that Plaintiff's "activities throughout the relevant period are inconsistent with his allegations of severely limiting symptoms." AR 26. Daily activities can form the basis of an adverse credibility finding when the claimant's activities either contradict his or her other testimony or meet the threshold for transferable work skills. *See Orn*, 495 F.3d at 639; *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). For a credibility analysis, the ALJ "need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a totally debilitating impairment.'"

*Whittenberg v. Astrue*, 2012 WL 3922151, at *4 (D. Or. Aug. 20, 2012) (quoting *Molina*, 674 F.3d at 1113); *see also Denton v. Astrue*, 2012 WL 4210508, at *6 (D. Or. Sept. 19, 2012) ("While [a claimant's] activities of daily living do not necessarily rise to the level of transferable work skills, they do contradict his testimony regarding the severity of his limitations.").

The ALJ supported his adverse credibility finding in part by comparing Plaintiff's testimony at the hearing regarding exercise limitations with Plaintiff's history of reporting regular exercise to his medical providers. AR 26. At the hearing, Plaintiff testified that for exercise he "just [tries] walking" about six blocks per day. AR 47. The ALJ noted that Plaintiff had a history of reporting a greater ability than walking only six blocks per day. AR 26-27 (citing AR 358-59, 476, 480-81). Specifically, the ALJ discussed Plaintiff's reports to his medical provider in 2011, 2012, and 2013. In 2011, Plaintiff reported that he was exercising regularly and "doing a lot of walking to keep his weight off." AR 358-59. In 2012, Plaintiff stated that "he [was] walking a mile for exercise [three] times per day." AR 476. Finally, in 2013, Plaintiff stated that he walked to the appointment from his home without symptoms and that he regularly did aerobics. AR 480-81.

The ALJ's finding that Plaintiff's history of walking distances longer than six blocks and engaging in other exercise such as aerobics is supported by substantial evidence in the record. Accordingly, the ALJ provided a clear and convincing reason for finding that Plaintiff's testimony regarding his significant limitations was contradicted by his daily living activities.

### 2. Objective Medical Findings

Next, the ALJ determined that the "minimal and mild physical examination findings found throughout the record are inconsistent with the claimant's allegations of severely limiting pain." AR 26. Specifically, the ALJ discussed evidence relating to Plaintiff's allegations of significant respiratory or pulmonary problems and to Plaintiff's complaint to the doctor on

October 6, 2011 of shoulder, elbow, and wrist pain. *Id.* A lack of objective medical evidence, standing alone, may not serve as a clear and convincing reason to discredit the claimant's credibility when the ALJ has already determined that the claimant's impairments could produce some of the symptoms alleged. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). The medical evidence, however, "is still a relevant factor in determining the severity of the claimant's [symptoms]." *Id.* (citing 20 C.F.R. § 404.1529(c)(2)).

First, the ALJ noted that, although Plaintiff underwent cardiac surgery in 2008, Plaintiff successfully completed cardiac rehab, had a normal baseline EKG[3] and an LVEF[4] of 63 percent, did well on his METS,[5] had no angina for weeks, walked frequently, and had no evidence of ischemia. AR 26 (citing AR 249, 306, 356, 358, 360). Additionally, the ALJ noted that the objective medical evidence showed that Plaintiff's EF[6] was normal and his blood pressure and pulse were "both perfect" with no abnormal findings related to Plaintiff's pulmonary system, which undermines allegations of significant respiratory or pulmonary symptoms. *Id.* (citing AR 362, 371, 375, 396-97, 401, 482, 497, 500, 505). The record supports the ALJ's characterization of Plaintiff's respiratory problems. For example, regarding Plaintiff's allegations of respiratory problems, the medical records regularly indicate that Plaintiff had no respiratory problems. *See, e.g.*, AR 360, 362, 369, 371, 375, 378, 381, 401, 478, 497, 499-500, 505, 516.

---

[3] An EKG, or electrocardiogram, tests for problems relating to the electrical activity of your heart.

[4] An LVEF, or left ventricular ejection fraction, measures how much blood is being pumped out of the left ventricle of the heart.

[5] A METS, or metabolic equivalence of task score, measures the amount of energy expended for certain activities.

[6] An EF, or ejection fraction, measures the percentage of blood leaving the heart each time the heart contracts.

Second, the ALJ noted that, on October 6, 2011, Plaintiff complained of pain to the doctor, but the physical examination showed no pain other than some crepitus with range of motion in Plaintiff's shoulders. AR 26 (citing AR 497-98). The Court finds that the physical examination concluding Plaintiff did not have pain on this one day is not a clear and convincing reason for concluding that Plaintiff's report of pain is not credible. Pain is a difficult symptom to verify with objective medical findings. *See Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) ("Unlike most medical conditions capable of supporting a finding of disability, [however,] pain cannot be objectively verified or measured.").

Although Plaintiff's October 6, 2011 doctor visit and examination does not support the ALJ's finding that Plaintiff's testimony of completely debilitating limitations is not supported by the objective medical evidence, considering the record as a whole the Court finds that the ALJ's conclusion is supported by substantial evidence in the record. Thus, the ALJ provided another clear and convincing reason to discount Plaintiff's credibility.

### 3. Lack of Consistent Complaints

The ALJ also determined that Plaintiff's "allegations of severely limiting physical symptoms throughout the relevant period are inconsistent with the lack of corresponding complaints to his treating providers." AR 26. An ALJ may make an adverse credibility finding based on inconsistencies in a claimant's testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). This includes a claimant's failure to report alleged symptoms to medical practitioners. *See, e.g.*, *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (finding that a claimant's failure to report symptoms was a clear and convincing reason for rejecting testimony).

The ALJ discussed Plaintiff's failure to make complaints during the many medical appointments occurring throughout the relevant periods that support Plaintiff's testimony at the hearing. AR 26. The ALJ then provided three examples.

First, despite Plaintiff's allegations of significant respiratory problems, the ALJ noted that Plaintiff did not complain of such problems during most of the medical appointments throughout the relevant period. *Id.* (citing AR 359, 368, 374). The ALJ further noted that Plaintiff denied shortness of breath during this time. *Id.* (citing AR 476). Plaintiff did report difficulties breathing immediately after his 2008 surgery. AR 254, 379. After that, however, Plaintiff routinely failed to complain about any respiratory problems until a recent case of acute bronchitis in November 2013, for which Plaintiff was prescribed antibiotics and cough syrup. AR 371, 381, 401, 497, 499 (failing to indicate respiratory problems); AR 505, 507, 514 (diagnosis and treatment of acute bronchitis). After Plaintiff recovered from his surgery, his single bronchitis attack does not contradict the ALJ's conclusion that Plaintiff's failure to report significant respiratory problems to his medical providers undermines Plaintiff's testimony of significant respiratory problems. Consequently, the ALJ's first example supports an adverse credibility finding.

Second, the ALJ found that Plaintiff failed to report the alleged back pain to his medical practitioner. AR 26. The one doctor's report that the ALJ cited indicates that Plaintiff was not experiencing back pain for that specific office visit. AR 502. Plaintiff did, however, report back pain on other occasions. AR 393, 400, 404, 466, 520. Therefore, the ALJ's second example does not support an adverse credibility finding.

Finally, although Plaintiff testified that he has trouble remembering things, there is no evidence in the record to support a memory problem. AR 26, 51. Plaintiff even acknowledged that he has no diagnosis and has not spoken to the doctor about these issues. AR 51, 62. Thus, the ALJ did not err in determining that Plaintiff undermined his credibility by alleging symptoms

of memory and respiratory problems but failing to report the alleged symptoms to his medical practitioners. *See Greger*, 464 F.3d at 972.

### 4. Conclusion

The Court finds that the ALJ provided clear and convincing reasons for determining that Plaintiff's testimony is not fully credible. Thus, the Court upholds the ALJ's credibility determination with respect to Plaintiff. *See Lingenfelter*, 504 F.3d at 1036.

## C. Medical Opinions

Plaintiff argues that the ALJ erred by giving little or no weight to the RFC questionnaire of Dr. Walker, who found significant limitations, and by giving significant weight to the opinions of the state agency medical consultants, Drs. Kehrli and Eder, who found minor limitations. An ALJ is responsible for resolving conflicts in the medical record, including conflicts among medical source opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between three types of physician opinions: treating physicians, examining physicians, and reviewing physicians, which are non-treating, non-examining physicians that only review a claimant's file. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); 20 C.F.R. § 404.1527(c). Generally, a treating physician's opinion carries more weight than an examining physician's opinion and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Holohan*, 246 F.3d at 1202; 20 C.F.R. § 404.1527(c). A reviewing physician's opinion cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).

Similarly, although an ALJ is not bound by physicians' disability opinions, the ALJ cannot reject a treating physician's opinion on disability without presenting clear and convincing reasons for doing so. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). A controverted

treating physician's opinion on disability can only be rejected with specific and legitimate reasons supported by substantial evidence in the record. *Id.* "In sum, reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion." *Id.*

Specific and legitimate reasons for rejecting a treating physician's opinion include its reliance on a claimant's discredited subjective complaints or its inconsistency with medical records or a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040-41 (9th Cir. 2008); *see, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). Additionally, an ALJ is not required to accept a physician's opinion that is brief, conclusory, or inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected check-off reports that did not contain any explanation of bases for conclusions).

### 1. Dr. Walker

Dr. Walker completed an RFC questionnaire in January 2014. AR 484-89. Throughout this report, Dr. Walker indicates that Plaintiff has some significant limitations, such as needing an hour break after an hour and a half of work; being unable to crouch and climb ladders; rarely being able to twist, stoop, and climb stairs; and needing sick-leave about four days per month. AR 487-89.

The ALJ concluded that the questionnaire was "based upon the claimant's subjective statements and references no objective findings as support for the severe limitations suggested therein[.]" AR 27 (citing AR 484-89). The ALJ noted that Dr. Walker "failed to describe the claimant's diagnoses, or identify any clinical findings, laboratory, or test results that [s]how the claimant's impairments." *Id.* (citing AR 484). Moreover, the ALJ observed that during Plaintiff's testimony at the hearing, Plaintiff testified that "Dr. Walker filled out the form after asking the

claimant questions about what the claimant thought he was capable of doing, including how much he was able to lift and walk and whether he needed to take breaks or lay down." AR 27-28 (referencing AR 50-51). The ALJ then stated two reasons for rejecting the testimony: because the Plaintiff's subjective statements are not entirely credible, the reliability of the source statement is undermined; and such severe limitations in the subjective source statement are inconsistent with the lack of significant complaints from the Plaintiff, the minimal and mild objective physical findings in Plaintiff's treatment notes, and Plaintiff's daily living activities. AR 28.

Regarding the first reason, because the Court upholds the ALJ's determination that Plaintiff's testimony about his subjective symptoms was not credible, the Court finds that the ALJ properly concluded that a questionnaire based on Plaintiff's subjective statements is also not credible. *Tommasetti*, 533 F.3d at 1040-41. The second reason is identical to the ALJ's reasons for rejecting the Plaintiff's credibility, so the Court similarly finds that Plaintiff's daily living activities and the objective medical evidence undermine findings of severe limitations. Because both reasons the ALJ offered are specific and legitimate and supported by substantial evidence in the record, the Court finds that the ALJ properly discredited Dr. Walker's RFC questionnaire.

### 2. Drs. Kehrli and Eder

Drs. Kehrli and Eder completed Disability Determination Explanations in July 2011 and November 2011, respectively. AR 70-76 (Dr. Kehrli's report); AR 86-93 (Dr. Eder's report). Dr. Kehrli found a few minor limitations for Plaintiff, such as that Plaintiff could only occasionally lift 20 pounds but that Plaintiff could frequently lift 10 pounds. AR 74. Dr. Eder reached a similar conclusion regarding Plaintiff's limitations. AR 90. The ALJ gave these opinions "significant weight." AR 27. The ALJ noted that these opinions are consistent with the Plaintiff's daily living activities and the medical and other evidence of record. AR 28. The ALJ

properly determined Dr. Walker's RFC questionnaire was not credible because the record does

not support such significant limitations. Thus, substantial evidence in the record supports the

ALJ's decision to credit the disability explanations of Drs. Kehrli and Eder, who found only

minor limitations.

**D.  Lay-Witness Testimony of KoLynn Hartman**

Plaintiff next argues that the ALJ erred in giving little or no weight to the lay witness

testimony of Plaintiff's wife, KoLynn Hartman. Although lay witnesses are not competent to

testify to medical diagnoses, they may testify and provide competent evidence regarding a

claimant's symptoms or how an impairment affects a claimant's ability to work. *Nguyen v.*

*Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Molina*, 674 F.3d at 1114. Thus, an ALJ cannot

reject a lay person's testimony without comment. *Nguyen*, 100 F.3d at 1467. To reject lay

testimony, the ALJ "must give reasons that are germane to each witness." *Dodrill*, 12 F.3d

at 919. "Further, the reasons 'germane to each witness' must be specific." *Bruce v. Astrue*, 557

F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053

(9th Cir. 2006)).

The Ninth Circuit has discussed the reasons for allowing lay witness testimony:

> Although eyewitnesses have to rely to some extent on
> communications with the claimant in ascertaining whether [the
> claimant] is disabled or malingering, we have held that friends and
> family members in a position to observe a claimant's symptoms
> and daily activities are competent to testify as to [the claimant's]
> condition.

*Dodrill*, 12 F.3d at 918-19. Therefore, "'[d]isregard of this evidence violates the Secretary's

regulation that he will consider observations by non-medical sources as to how an impairment

affects a claimant's ability to work.'" *Id.* at 919 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232

(9th Cir. 1987) and citing 20 C.F.R. § 404.1513(d)-(e)); *see also Bruce*, 557 F.3d at 1116 ("A lay

person, [a claimant's] wife, though not a vocational or medical expert, was not disqualified from rendering an opinion as to how her husband's condition affects his ability to perform basic work activities.") (citing 20 C.F.R. § 404.1513(d)(4)).

In determining Plaintiff's RFC, the ALJ discussed Mrs. Hartman's letter from January 2014. AR 27 (citing AR 241-42). Mrs. Hartman described Plaintiff's symptoms as follows:

> He went to therapy as directed by his cardiologist and has undergone two stress tests in the past six years. His condition has been evaluated twice, first 23% of his heart was destroyed in 2008, the second stress test proved to be 40% less than the normal range as of 2014. . . . My husband can no longer lift more than 35 [pounds], [and] he has trouble walking more than a half mile . . . . He needs to lean on me for support getting up and down on the floor . . . . He will need additional surgery on his right wrist, and right knee in the future. . . . He[,] along with all of these aliments, has a short term memory loss. Several years ago, when he lived in Salem, before we were married, he was injured at work. The doctor told him after looking at the X-Ray that he had a slipped disk between the fourth and fifth lumbar of his spine. The pain has gradually gotten worse over the years.

AR 241.

The ALJ stated that he was "not persuaded by the letter . . . as it relates to the claimant's medical conditions, and g[a]ve it little weight[.]" AR 27 (citing 241-42). The ALJ gave two reasons for his decision. First, the ALJ found Mrs. Hartman's statements regarding Plaintiff's conditions to be inconsistent with the objective medical findings. *Id.* The ALJ provided an example, explaining that Mrs. Hartman's statements that Plaintiff's heart functioning are far below normal and have been decreasing are inconsistent with Plaintiff's improvements. *Id.* (citing 241). Second, the ALJ found Mrs. Hartman's statements to be inconsistent with Plaintiff's complaints to his medical providers, his minimal and mild physical examination findings, and his activities. *Id.*

PAGE 20 – OPINION AND ORDER

As discussed above, the objective medical findings indicate that Plaintiff successfully completed rehab and that Plaintiff's blood pressure, pulse, and pulmonary system were consistently normal. AR 249, 306, 356, 358, 360 362, 371, 375, 396-97, 401, 482, 497, 500, 505. Furthermore, his daily living activities, particularly his walking and aerobic exercise, indicates that he is capable of walking more than just a half mile. AR 358-59, 476, 480-81. Because the objective medical evidence and daily living activities contradict Mrs. Hartman's testimony, the Court finds that the ALJ's germane reasons for discrediting Mrs. Hartman's testimony are supported by substantial evidence in the record. *Dodrill*, 12 F.3d at 919.

**E. Questioning the Vocational Expert**

Plaintiff argues that the ALJ erred by failing to give Plaintiff's counsel an opportunity to question the vocational expert ("VE"). Plaintiff claims that, although the ALJ provided Plaintiff's counsel with an opportunity to question the VE at the hearing, the ALJ should have reconvened the hearing to recall the VE after Plaintiff submitted additional evidence.

Step four of the sequential analysis requires a finding of no disability if the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The burden is on the claimant to demonstrate disability at step four. *Bustamante*, 262 F.3d at 953. When considering whether a claimant is capable of performing past relevant work, an ALJ will frequently consult the Dictionary of Occupational Titles ("DOT") to determine the physical and mental demands of a claimant's former work. An ALJ may also consider testimony obtained from a VE but is not required to do so at this stage. *Crane*, 76 F.3d at 255. Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support a conclusion that the claimant is capable of performing his or her past work. *Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009); *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

At the hearing, the ALJ called the VE for the narrow purpose of "describ[ing] [Plaintiff's past relevant work as a truck driver and exterminator] per the Dictionary of Occupational Titles." AR 62. Regarding work as an exterminator, the VE testified that, according to the DOT, there would be "occasional climbing, crawling, fingering, frequent stooping, kneeling, crouching, reaching, [and] handling," as well as "frequent exposure to atmospheric conditions." AR 64-65. Further, the VE noted that there would be exposure to hazardous chemicals. AR 65. The VE questioned one aspect of the DOT's description of an exterminator, explaining that an exterminator would likely have to balance occasionally, which is not part of the DOT's requirements for an exterminator. *Id.*

After the VE described the work of an exterminator according to the DOT, the ALJ did not ask the VE whether Plaintiff could perform work consistent with the DOT. The ALJ instead stated that he was "not going to pose a hypothetical at this point, because [he] want[ed] to see what the missing medical evidence is, and ultimately, . . . the case turns on—can [Plaintiff] do this past work or not." AR 66. The ALJ then explained to Plaintiff's counsel that the ALJ "can figure that out once [he] get[s] the rest of the medical evidence." *Id.* The ALJ noted that he intended to determine whether Plaintiff could perform Plaintiff's past relevant work after receiving the additional evidence. The ALJ then asked Plaintiff's counsel if he had "any questions that [he] would like to pose to [the VE] . . . ." *Id.* Plaintiff's counsel chose not to ask any questions. *Id.* After the hearing, Plaintiff submitted additional medical evidence to the ALJ. AR 20 (citing AR 495-519).

In his decision, the ALJ noted that he considered the additional medical evidence and determined that Plaintiff could perform past relevant work as an exterminator as actually and generally performed. AR 28. The ALJ based this decision on the DOT's description of an

exterminator and discussed the VE's limited testimony regarding the requirements of work as an exterminator.[7] *Id.* The ALJ then "compared [Plaintiff's] residual functional capacity above with the physical and mental demands of [an] exterminator . . . ." *Id.*

The ALJ's determination that Plaintiff could perform his past relevant work as generally performed is supported by substantial evidence in the record. The ALJ was not required to call a VE to determine whether Plaintiff could perform his past relevant work, and although the ALJ chose to call a VE, the ALJ did so for the narrow purpose of explaining the DOT and not to discuss Plaintiff's limitations in relation to the DOT. *Crane*, 76 F.3d at 255. Because the VE only testified about the objective requirements of an exterminator—not about Plaintiff's limitations— Plaintiff's submission of additional medical evidence did not trigger any obligation for the ALJ to recall the VE. Moreover, the ALJ expressly told Plaintiff's counsel that the ALJ would make a determination regarding Plaintiff's abilities and past relevant work after receiving the additional evidence. The ALJ then specifically provided Plaintiff's counsel with the opportunity to ask the VE questions. Plaintiff's counsel could have asked the VE questions about Plaintiff's limitations, including those limitations that Plaintiff believed the additional medical evidence would support, but Plaintiff's counsel chose not to do so. The ALJ did not err by failing to reconvene the hearing to allow Plaintiff's counsel to question the VE after submission of the additional medical evidence.

---

[7] The ALJ noted that, although the DOT does not require balancing for work as an exterminator, Plaintiff could perform work as an exterminator regardless of whether balancing is required because Plaintiff does not have a balancing limitation. AR 28 n.3.

## CONCLUSION

The Commissioner's decision is based on substantial evidence in the record. The ALJ's

decision that Plaintiff is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 25th day of November, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge